UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-60597-CIV-COHN/SELTZER

LISA KOWALSKI, a Florida resident,

      Plaintiff/Counterdefendant,

v.

JACKSON NATIONAL LIFE INSURANCE
COMPANY, a Michigan corporation,

      Defendant/Counterplaintiff/
      Third-Party Plaintiff,

v.

BARBARA WILSON, as Personal
Representative of the ESTATE OF
FLORENCE P. KOWALSKI,

      Third-Party Defendant.
_____/

## ORDER DENYING WILSON'S MOTION FOR SUMMARY JUDGMENT AND GRANTING KOWALSKI'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Third Party Defendant's Motion for

Summary Judgment Regarding Plaintiff's Third Amended Complaint, Statement of

Material Facts, and Supporting Memorandum of Law [DE 188] ("Wilson Motion") and

and Kowalski's Motion for Summary Judgment; Rule 56 Statement of Undisputed

Material Facts and Memorandum of Law in Support of the Motion [DE 190] ("Kowalski

Motion") (collectively "Motions"). The Court has carefully considered the Motions, the

responses and replies thereto, the record in the case, and is otherwise advised in the

premises.

## I. BACKGROUND

## A. Procedural History.

Plaintiff Lisa Kowalski ("Kowalski") commenced this action on April 3, 2012, against Defendants Jackson National Life Insurance Company ("Jackson") and Barbara Wilson ("Wilson") to establish her entitlement to the proceeds of a life insurance policy. See Compl. [DE 1].  After Wilson filed a motion to dismiss alleging that this Court lacked personal jurisdiction over her and Jackson sought dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Kowalski sought leave to file an amended complaint which dropped Wilson as a party and amended the allegations in her Complaint.  See DE 21.  The Court granted the motion and allowed Kowalski to amend the Complaint.  See DE 29.  In the Amended Complaint, Kowalski sought a declaratory judgment from this Court reflecting that she is the owner and beneficiary of the policy proceeds.  Am. Compl. [DE 30] at 3.

On July 27, 2012, Jackson filed an unopposed motion in which it sought leave to respond to the Amended Complaint within 10 business days of the appointment of a personal representative for the estate of Florence P. Kowalski ("the Estate").  See DE 31.  In the motion, Jackson explained that it has no interest in the policy proceeds and needed the proper adverse claimants to the proceeds before the Court in order to interplead the funds into the Court registry.  Id. ¶ 4.  The Court granted this motion. See DE 32.

Before a personal representative had been appointed for the Estate and Jackson filed its answer, Kowalski moved (1) to compel Jackson to deposit the proceeds of the policy into the Court registry and (2) for partial summary judgment.  See DE 34, 35.  On

2

October 31, 2012, the Court denied both motions as premature because the Court could not issue a declaratory ruling as to the beneficiary of the policy proceeds until all parties asserting an interest in the policy were before the Court.  See DE 46.

On November 12, 2012, Jackson filed its answer and third party complaint against Wilson, who the probate court had appointed as the personal representative of the Estate.  See DE 47. On January 22, 2013, Wilson filed an answer to Jackson's third party complaint which asserted a counterclaim against Jackson for a declaratory judgment (Count 1) and breach of contract (Count IV) and cross claims against Kowalski for a declaratory judgment (Count 1), unjust enrichment (Count II), and conversion (Count III).  See DE 75.  On February 22, 2013, Jackson filed its answer to Wilson's counterclaim.  See DE 90.  This answer asserted a cross claim against Kowalski for fraudulent misrepresentation (Count I), negligent misrepresentation (Count II), indemnity (Count III), and unjust enrichment (Count IV).  Cross Claim [DE 90] at 17-20.  On April 23, 2013, the Court entered an order denying Kowalski's motion to dismiss Jackson's cross claim.  See DE 108.

Jackson filed a motion to deposit the proceeds of the life insurance policy in the Court registry on November 27, 2012.  See DE 50.  The Court granted in part the motion, allowing Jackson to deposit the proceeds into the registry, but declining to dismiss Jackson based on Wilson's pending counterclaim.  See DE 79.  While the motion to deposit the life insurance proceeds was pending, Kowalski filed a motion for leave to file a second amended complaint.  See DE 72.  Although both Jackson and Wilson argued that further amendment of the complaint was futile, the Court granted the motion finding that the futility arguments would best be addressed by way of a

3

motion to dismiss or motion for summary judgment.  See DE 94.

Kowalski filed her Second Amended Complaint on March 12, 2013.  2d Am. Compl. [DE 95].  The Second Amended Complaint brought a claim against Wilson for unjust enrichment and constructive trust and a claim against Jackson for breach of contract.  On May 6, 2013, the Court granted Wilson's motion to dismiss the claim against her.  See DE 109.  The Court denied Kowalski's motion for reconsideration of this order.  See DE 113.  Jackson then moved for summary judgment on Kowalski's breach of contract claim, Wilson moved for summary judgment on the counterclaim and third party complaint filed by Jackson and on Count I of her counterclaim and cross claim, and Kowalski moved for partial summary judgment against both Jackson and Wilson.  See DE 118, 121, 124.  On July 1, 2013, the Court granted Jackson's motion for summary judgment, granted in part and denied in part Wilson's motion for summary judgment, and denied Kowalski's motion for partial summary judgment.  See DE 157 ("July 1, 2013 Order").  In the July 1, 2013 Order, the Court determined that under the terms of the policy, the Estate is entitled to the policy proceeds.  The Court, however, also granted Kowalski leave to reassert her claim for unjust enrichment and constructive trust against the Estate.

Kowalski filed a Third Amended Complaint on July 8, 2013.  See 3d Am. Compl. [DE 161].  Wilson then filed a motion to dismiss the claim against the Estate for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  See DE 171.  The Court denied the motion to dismiss on August 30, 2013.  See DE 181 ("August 30, 2013 Order").  Wilson and Kowalski have now filed cross motions for summary judgment regarding all remaining claims between the Estate and Kowalski.

4

## B. Undisputed Material Facts.[1]

On or about March 18, 1992, Jackson issued a life insurance policy upon the life of Florence P. Kowalski (the "Insured") in the amount of $175,500. Jackson's Statement of Material Facts [DE 121 at 6-13] ("Jackson Facts") ¶ 1; Kowalski's Response to Jackson's Statement of Undisputed Material Facts [DE 135] ("Jackson Response Facts") ¶ 1. Edward Kowalski, Kowalski's husband, and the son of the Insured, was the owner and beneficiary of the policy. Jackson Facts ¶ 2; Jackson Response Facts ¶ 2. Edward Kowalski died on April 30, 2008. Jackson Facts ¶ 5; Jackson Response Facts ¶ 5. To change the ownership of the policy, the policy provides that:

> The ownership of this Policy may be changed at any time during the Insured's lifetime. Such change must be made by written notice acceptable to the Company. A change will take effect on the date the notice is signed. However, the change will not apply to any payments made or actions taken by the Company before the notice is received at the Home Office. The Company reserves the right to require that this Policy be presented for endorsement of any change.

Jackson Facts ¶ 7 (quoting Policy [DE 95-2] at 2); Jackson Response Facts ¶ 7. To change the policy beneficiary, the policy states that:

> While this policy is in force, the Owner may change the Beneficiary, unless otherwise provided by endorsement, by filing at the Home Office of the Company an acceptable written request. Such change will be subject to any existing assignment of this Policy and will take effect on the date the notice was signed. Any proceeds paid before a change of beneficiary is recorded will not be subject to change.

Jackson Facts ¶ 8 (quoting Policy [DE 95-2] at 1); Jackson Response Facts ¶ 8.

---

[1] Many of the undisputed material facts come from the Court's July 1, 2013 Order.

Kowalski submitted Life Service Request forms and supporting documentation to Jackson on August 12, 2008, September 29, 2008, and October 29, 2008.  Jackson Facts ¶¶ 9, 13, 18. Jackson Response Facts ¶¶ 9, 13, 18.  Jackson processed Kowalski's request for a change of ownership and sent her a letter dated November 7, 2008, memorializing this change.  Jackson Facts ¶ 22; Jackson Response Facts ¶ 22. In none of these forms, however, did Kowalski fill in the section requesting a change of beneficiary.  Jackson Facts ¶¶ 12, 15, 21, 24; Jackson Response Facts ¶¶ 12, 15.  Nor did Kowalski submit any other written requests to Jackson requesting a change of beneficiary.  Jackson Facts ¶ 24.  On or about October 14, 2010, after Jackson had named Kowalski policy owner, Kowalski obtained a $50,000 loan against the policy. Jackson Facts ¶ 26; Jackson Response Facts ¶ 26.  This loan was never paid back. Jackson Facts ¶ 27; Jackson Response Facts ¶ 27.

Prior to Edward Kowalski's death, all policy premiums were paid with joint marital funds of Edward and Lisa Kowalski.  Kowalski's Statement of Undisputed Material Facts [DE 190 at 2-9] ("Kowalski Facts") ¶ 2.  After Edward's death, all premiums were paid solely by Lisa Kowalski.  Id.; Transcript of July 18, 2010 Call [DE 126-10] at 2 ("my daughter-in-law pays the insurance on my life–but she's not listed as the beneficiary yet."); 5 ("I said, You've been paying on it, but I don't think you have the ownership on it.").  There is no competent evidence that the Insured or any of her heirs ever paid any of the policy premiums.  Kowalski Facts ¶ 5.  Kowalski continued to pay the policy premiums after her husband's death because she believed that she was both the policy beneficiary and owner.  Affidavit of Lisa Kowalski [DE 126-1] ¶ 8.

On February 4, 2011, the Insured died.  Jackson Facts ¶ 28; Jackson Response

6

Facts ¶ 28.  Under the terms of the policy, where the beneficiary predeceases the Insured, "any proceeds will be payable to the estate or legal successors of the Insured." Jackson Facts ¶ 30 (citing Policy [DE 95-2] at 1); Jackson Response Facts ¶ 30. Following the Insured's death, Wilson's husband contacted Jackson to notify them of her death and request that all forms be mailed to Wilson.  Jackson Facts ¶ 31; Jackson Response Facts ¶ 31.  Both Kowalski and Wilson contacted Jackson and requested that the policy proceeds be paid to them.  Jackson Facts ¶¶ 35, 37, 40; Jackson Response Facts ¶¶ 35, 37, 40.  Jackson repeatedly notified Kowalski regarding the documentation it would require to process her claim.  Jackson Facts ¶¶ 33, 38, 41; Jackson Response Facts ¶¶ 33, 38, 41.  On November 1, 2011, in response to an October 3, 2011 letter from Kowalski, Jackson responded that it had an insufficient basis to pay Kowalski the death benefit.  Jackson Facts ¶¶ 43-44; Jackson Response Facts ¶ 43.

On July 1, 2013, the Court found that under the express terms of the policy, Kowalski failed to substantially comply with the policy's provisions regarding change of beneficiary.  See July 1, 2013 Order.  Accordingly, because the Insured predeceased the named beneficiary, Edward Kowalski, the Court held that the Estate was entitled to the policy proceeds under the policy's express terms.  See id.

## II. DISCUSSION

### A. Legal Standard.

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

As long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).

### B. Whether Kowalski was the Owner of the Policy.

In the Motions, the parties debate whether Kowalski was actually the owner of the policy.  Wilson maintains, as she did in her previous motion for summary judgment,

that Jackson's designation of Kowalski as the policy owner was improper because Edward Kowalski's will was never submitted to probate and Kowalski was never appointed by the probate court as the personal representative of his estate. See Third Party Defendant's Memorandum of Law in Opposition to Kowalski's Motion for Summary Judgment [DE 198] ("Wilson Response") at 11; Wilson Motion at 19. Wilson has brought claims against Kowalski which assert that because she was never properly designated as the policy's owner, she was not entitled to take a $50,000 loan against the policy. Cross Claim [DE 75] ¶¶ 71-98 (bringing claims for unjust enrichment and conversion). The Court previously denied Wilson's motion for summary judgment on Count One of the Cross claim which sought a declaration that Jackson improperly designated Kowalski as the owner of the policy and that Kowalski is required to repay a $50,000 loan she took against the policy proceeds. July 1, 2013 Order at 21-23. Kowalski has now moved for summary judgment on all claims the Estate has brought against her. Kowalski Motion at 1. The Court's reasoning in the July 1, 2013 Order mandates summary judgment for Kowalski on Wilson's claims regarding the $50,000 loan.[2]

According to Wilson, because Edward Kowalski's will had no legal effect, the November 7, 2008 letter designating Kowalski the policy's owner was not effective. To support this position, Wilson relies upon Florida case law and Fla. Stat. § 733.103

---

[2]    Wilson asserts that summary judgment should be confined only to the Third Amended Complaint. See Wilson Response at 18 n.13. The Court disagrees. The sole reason the Court was unable to grant summary judgment for Kowalski on these claims in the previous summary judgment motion is that Kowalski failed to move for summary judgment. Wilson also did not move for summary judgment on Counts 2 and 3 of its Cross Claim.

which provides that "[u]ntil admitted to probate in this state or in a state where the decedent was domiciled, the will shall be ineffective to prove title to, or the right to possession of, property of the testator."  Fla. Stat. § 733.103(1).  As the Court previously observed, Wilson's argument that Kowalski was improperly designated as policy owner relies solely upon a Florida statute and case law interpreting the effect of wills.  It is the policy, however, which governs the change of ownership in this case. The policy provides: "[t]he ownership of this policy may be changed at any time during the Insured's lifetime.  Such change must be made by written notice acceptable to the Company."  Policy [DE 95-2] at 2.  On November 7, 2008, Jackson sent Kowalski a letter stating that her request for a change of ownership had been processed.  Jackson Facts ¶ 22; Jackson Response Facts ¶ 22.  The November 7, 2008 letter was in response to Jackson's receipt of Kowalski's October 29, 2008 Life Service Request Form which was accompanied by a copy of Edward Kowalski's death certificate, a portion of Edward Kowalski's will stating that Kowalski was appointed as his personal representative, and an October 9, 2008 letter from Jackson to Kowalski.  Jackson Facts ¶ 18; Jackson Response Facts ¶ 18.  The October 9, 2008 letter requested a "[c]opy of last will or testament *or* probate papers naming the executor for" Edward Kowalski's estate, any codicils to his will, and a "Service Request form by the executor of the estate and notarized."  Jackson Facts ¶ 17; Jackson Response Facts ¶ 17 (emphasis added).  Kowalski has also pointed to testimony from Jan Reeves, a director in Jackson's policy-service owner department, that Jackson accepts designation of executors in wills as sufficient documentation for processing a change of ownership. Transcript of the Deposition of Jan Reeves [DE 126-20] at 24:25-25:1-8.  Additionally,

10

Kowalski has identified documentary evidence that a non-probated will is sufficient for Jackson to effectuate a change of policy ownership.  The record before the Court simply does not establish that "written notice acceptable to the Company" required that Edward Kowalski's will be submitted to probate or that Kowalski be appointed his estate's executor through the probate court.  Accordingly, the Court will grant summary judgment for Kowalski on Wilson's Cross Claims seeking a declaration that Kowalski is not the policy's owner and that she is required to pay back the $50,000 loan taken against the policy, claims for unjust enrichment and conversion, and any affirmative defenses related to this issue.

### C. Whether the Policy Prohibits Any Claim for Unjust Enrichment.

Wilson argues that the express terms of the policy govern such that Kowalski cannot maintain a claim for unjust enrichment as a matter of law.  Wilson Motion at 15-20.  Specifically, Wilson argues that (1) the Court's prior ruling that the policy controls payment of the proceeds mandates summary judgment for the Estate; (2) general equitable principals establish that it would not be unjust for the Estate to retain the policy proceeds; (3) equitable arguments cannot trump the express terms of the policy; (4) unjust enrichment cannot apply where an express contract governs the benefit; and (5) unjust enrichment is not available where the plaintiff derived a substantial benefit from the payments made resulting in the alleged unjust enrichment.  Id.  Kowalski disputes that the July 1, 2013 Order mandates summary judgment for the Estate.  Kowalski's Response to Estate's Motion for Summary Judgment [DE 199] ("Kowalski Response") at 3-4.  Kowalski also argues that the Court's holding in the August 30, 2013 order denying Wilson's motion to dismiss the Third Amended Complaint should

11

be considered the law of the case and mandates denial of Wilson's Motion.  Id. at 3.[3]

Additionally, Kowalski disputes that the policy bars her unjust enrichment claim because

the Insured was not a party to the insurance contract.  Id. at 7-8.  Finally, Kowalski

argues that she did not derive a substantial benefit from the premium payments she

made because the benefit unjustly conferred on the Estate is the proceeds of the

insurance policy itself.  Id. at 8.  The Court will address these arguments, which largely

relate to whether the insurance policy bars the unjust enrichment claim, individually

below.

    As the Court has previously observed, unjust enrichment is an equitable

doctrine.  "Liability in unjust enrichment has in principle nothing to do with fault.  It has

to do with wealth being in one person's hands when it should be in another person's."

Guyana Tel. & Tel. Co. v. Melbourne Int'l Comms., Ltd., 329 F.3d 1241, 1245 n.3 (11th

Cir. 2003).  The doctrine applies only where (1) the plaintiff conferred a benefit on the

defendant, who had knowledge of the benefit; (2) the defendant voluntarily accepted

and retained the benefit; and (3) under the circumstances, it would be inequitable for

the defendant to retain the benefit without paying for it.  See Shands Teaching Hosp. &

Clinics, Inc. v. Beech St. Corp., 899 So. 2d 1222, 1227 (Fla. Dist. Ct. App. 2005).

---

[3]     Kowalski's assertion that the Court's statements in the August 30, 2013
Order Denying Motion to Dismiss Cross Claim Against the Estate of Florence P.
Kowalski [DE 181] ("August 30, 2013 Order") constitute law of the case is legally
incorrect.  It bears repeating that the legal standards on motions to dismiss and motions
for summary judgment are different and that the August 30, 2013 Order was not a final
judgment.  See F.D.I.C. v. Stahl, 89 F.3d 1510, 1514 n.7 (11th Cir. 1996) (citing Vintilla
v. United States, 931 F.2d 1444, 1447 (11th Cir. 1991)).  Thus, the Court does not
consider itself bound by any of the statements in the August 30, 2013 Order and will not
regard any statements therein as the law of the case.

Here, Wilson asserts that the existence of the insurance policy bars any claim for unjust enrichment.  As the Court acknowledged in the August 30, 2013 Order, Florida courts have held that contracts barring the unjust enrichment claim must be between the parties to the unjust enrichment claim.  See, e.g., Moynet v. Courtois, 8 So. 3d 377, 379 (Fla. Dist. Ct. App. 2009) ("[W]here there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment."); Diamond "S" Dev. Corp. v. Mercantile Bank, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008) (same); Shands Teaching Hosp. & Clinics, Inc., 899 So. 2d at 1227 (same). Wilson asserts that the Insured was in fact a party to the insurance policy and that the Estate is her successor in interest.  Wilson Motion at 17; Third Party Defendant's Reply Memorandum of Law in Support of Motion for Summary Judgment [DE 203] ("Wilson Reply") at 7.  Kowalski, however, contends that the Insured was neither a party to the insurance policy nor a third party beneficiary under the contract. Kowalski Response at 7-8.

The Court agrees with Kowalski that the Insured was not a party to the insurance policy.  Although the Insured did sign the insurance policy application, as Kowalski points out, her consent was required under Florida law for her son, Edward, to obtain a policy on her life.  Kowalski Response at 7 n.8 (citing Fla. Stat. § 627.404(5)).[4]  The

---

[4]      The cited provision reads: "[a] contract of insurance upon a person, other than a policy of group life insurance or group or blanket accident, health, or disability insurance, may not be effectuated unless, on or before the time of entering into such contract, the person insured, having legal capacity to contract, applies for or consents in writing to the contract and its terms, except that any person having an insurable interest in the life of a minor younger than 15 years of age or any person upon whom a minor younger than 15 years of age is dependent for support and maintenance may effectuate a policy of insurance on the minor."  Fla. Stat. §627.404(5).

policy itself is clear that all rights under the policy belong to the Owner: "[w]hile the Insured is living, all rights of this Policy belong to the Owner."  Policy [DE 95-2] at 2. Edward Kowalski is listed as the applicant/owner on the insurance policy application. Policy [DE 95-3] at 4.  Thus, there is no support for the proposition that the Insured was a party to the insurance policy.

There is also no evidence that the Estate or the Insured is a third party beneficiary under the policy.  Under Florida law, "[t]he beneficiary has no beneficial interest or right in the policy or to the proceeds. The beneficiary possesses only an expectancy during the insured's life." Ross v. Ross, 20 So. 3d 396, 398 (Fla. Dist. Ct. App. 2009) (citing Pendas v. Equitable Life Assurance Soc'y, 176 So. 104 (Fla. 1937); Lindsey v. Lindsey, 492 A.2d 396, 398 (Pa. Super. Ct. 1985) ("the naming of a beneficiary on a life insurance policy vests nothing in that person during the lifetime of the insured; the beneficiary has but a mere expectancy")).  Moreover, to be considered a third party beneficiary under a contract, "a party must demonstrate that the agreement to be enforced shows a clear intent and purpose on the part of the contracting parties that one of them should become the debtor of a third. One who benefits only indirectly from the provisions of a contract made by others for their own benefit, and not for the benefit of such third party, cannot maintain an action upon the contract." Deanna Constr. Co. v. Sarasota Entm't Corp., 563 So. 2d 150, 151 (Fla. Dist. Ct. App. 1990) (citations omitted).  "[A] party claiming third party beneficiary status must be shown to be a direct and intended beneficiary of the agreement, not merely an incidental

14

beneficiary; that in order to find the requisite intent to entitle a party to sue as a third party beneficiary, it must be shown that both contracting parties agreed to benefit the asserted third party."  Id.  Here, the Estate is only an incidental beneficiary to the policy because the named beneficiary, Edward Kowalski, predeceased the Insured.  Thus, the existence of the insurance policy does not preclude Kowalski's claims against the Estate, a non-party to the contract.

Because the Court has found that the existence of the policy does not bar Kowalski's unjust enrichment claim against the Estate, the Court also rejects Wilson's argument that the Court's July 1, 2013 Order mandates entry of summary judgment for the Estate.  See Wilson Motion at 15-16.  Wilson relies on Thompkins v. Lil' Joe Record, Inc., 476 F.3d 1294 (11th Cir. 2007), for the proposition that because the Court found that the policy controls payment of the proceeds to the Estate, it would not be unjust for the Estate to retain the policy proceeds.  See Wilton Motion at 15.  The Court finds that this case is inapposite.  In Thompkins, the Eleventh Circuit considered the issue of "what happens when a debtor-in-possession in a Chapter 11 bankruptcy case, who negotiated the purchase of copyrights prior to the bankruptcy proceeding, later uses the bankruptcy code to reject those contracts that transferred ownership of the copyrights to the debtor."  476 F.3d at 1297.  The court held that Lil' Joe became lawful owner of the copyrights through the bankruptcy, and it had no royalties obligations to Thompkins.  Id. at 1314.  "Thus, any profits Lil' Joe realize[d] from its exploitation of the copyrights that it lawfully purchased through the bankruptcy cannot be characterized as unjust, and Thompkins cannot maintain this claim."  Id.  By contrast here, the Estate was not a party to the insurance policy and did not contribute in any way to the payment

of the policy premiums.  Thus, the facts of this case are not analogous to Thompkins.

Wilson also argues that equitable principles dictate that Kowalski's unjust enrichment claim fails because "equity follows the law."  Wilson Motion at 15.  As discussed above, however, because the Estate was not a party to the contract at issue, equitable principles do not preclude Kowalski's unjust enrichment claim against the Estate.  Indeed, Wilson's citation of United States Life Insurance Co. v. Logus Manufacturing Corp., 845 F. Supp. 2d 1303 (S.D. Fla. 2012), supports this result. Wilson cites Logus for the proposition that "equitable arguments" cannot "trump the express terms of the contract agreed to by the parties because to hold otherwise would rewrite the contract for the parties."  845 F. Supp. 2d at 1315.  As the Court has stated repeatedly, however, the Estate was not a party to the contract at issue in this case. Moreover, as discussed in Logus, the doctrine of strict compliance "exists to protect the insurance company."  Id. at 1314.  Thus, the fact that this Court has previously found that Kowalski did not strictly comply with the policy's terms for making herself the policy's beneficiary does not preclude her equitable unjust enrichment claim against the Estate, a non-party to the contract.

Next, Wilson contends that unjust enrichment is not available where the plaintiff has derived a substantial benefit from the payments resulting in the alleged unjust enrichment.  Wilson Motion at 19.  Wilson contends that Kowalski received a substantial benefit from her payment of the policy premiums because she received a $50,000 loan against the policy proceeds.  Id. at 20.  The flaw with this logic, however, is that the benefit Kowalski contends was unjustly conferred on the Estate is the entitlement to the policy proceeds themselves.  See 3d Am. Compl. ¶¶ 39-43; Kowalski

16

Response at 8.  The cases Wilson relies on for the proposition that Kowalski somehow derived the full benefit of her bargain are not persuasive.  In <u>Alvarez v. Royal Carribean Cruises, Ltd.</u>, 905 F. Supp 2d 1334 (S.D. Fla. 2012), the Court held that the plaintiffs' unjust enrichment claim was precluded because they had been on board ship for their cruises, thus obtaining a benefit of the contract for carriage by sea.  <u>Id.</u> at 1341.  Similarly, in <u>Prohias v. Pfizer</u>, 490 F. Supp. 2d. 1228 (S.D. Fla. 2007), the Court held that the plaintiffs failed to state an unjust enrichment claim because they had paid for and received a cholesterol reducing drug.  <u>Id.</u> at 1236.  By contrast here, Kowalski alleges to have paid all the policy premiums after her husband's death, but has not received the death benefit.  Moreover, the $50,000 loan was charged against the policy proceeds. Thus, Kowalski did not receive the benefit of her bargain.

### D.  Whether Kowalski's Alleged Unilateral Mistake Bars Her Claim for Unjust Enrichment.

Wilson also argues that she is entitled to summary judgment on Kowalski's unjust enrichment claim because Kowalski cannot obtain equitable relief based upon her own mistake.  Wilson Motion at 20.  Wilson contends that the undisputed record indicates that only Kowalski made mistakes regarding changing the policy's beneficiary.  <u>Id.</u> at 21.  Kowalski insists that her belief that she was the policy's beneficiary was also premised upon mistakes made by Jackson and her husband, Edward.  Kowalski Response at 10-14.  She also contends that the cases Wilson relies upon for the proposition that a unilateral mistake bars an equitable claim do not apply to the facts of this case.  <u>Id.</u> at 9-10.

First, the Court agrees with the Estate that there is simply no competent

evidence of mistakes on the part of anyone other than Kowalski. As discussed in the Court's July 1, 2013 Order, Kowalski never submitted a written request to Jackson wherein she requested that she be made the policy's beneficiary. July 1, 2013 Order at 11-12. The statements from Jackson customer service representative Ron upon which Kowalski relied were ambiguous at best. Id. at 13 n.4. Moreover, this customer service representative had no authority to change the policy's requirement that a beneficiary change be submitted in writing. Id. Finally, Kowalski was told on at least two occasions that Jackson could not disclose the identity of the beneficiary to her because she was not the policy owner and informed Kowalski only that she had been recorded as policy owner. Id. at 16-17. Thus, the undisputed record before the Court simply does not reflect any mistakes on the part of Jackson.

Regarding Kowalski's allegation that her husband Edward's will reflects his mistaken belief that she was already the policy beneficiary, the Court finds that the will is irrelevant to the issue at hand. Even if the will gave Lisa a basis to believe she was already policy beneficiary, this belief was refuted by her multiple contacts with Jackson where representatives informed her that they could not tell her who the policy beneficiary was until she became policy owner. Reply to Plaintiff's Statement of Additional Material Facts [DE 146] ¶ 50 (citing Transcript of June 10, 2008 Call [DE 126-9] at 4:4-5); Transcript of September 25, 2008 Call [DE 126-12] at 6:5-7:8). Kowalski also only received written confirmation from Jackson that she had been made policy owner, not beneficiary. See Jackson Facts ¶ 22; Jackson Response Facts ¶ 22; November 7, 2008 letter [DE 122-11]. Thus, Edward's will cannot constitute the mistake which informs Kowalski's unjust enrichment claim.

18

Nonetheless, the Court rejects Wilson's assertion that an unjust enrichment claim cannot be based upon a unilateral mistake. <u>See</u> Wilson Motion at 20. The case Wilson relies upon for this proposition is inapplicable to Kowalski's unjust enrichment claim. In <u>Nordberg v. Green</u>, 638 So. 2d 91 (Fla. Dist. Ct. App. 1994), the trial court alleviated one defendant from liability on a beach of warranty "which resulted from her voluntary and knowledgeable execution of the deed." <u>Id.</u> at 93. Although the defendant argued that there was a mutual mistake which resulted in her signing the warranty deed, the appellate court found that there was no mistake at all. <u>Id.</u> Thus, this case does not address the issue of whether a unilateral mistake bars a claim for unjust enrichment.

Similarly, <u>Graham v. Clyde</u>, 61 So. 2d 656 (Fla. 1952), cited in <u>Nordberg</u>, addressed whether a plaintiff was entitled to rescind a construction bid that included a $5000.00 computation error. <u>Id.</u> at 657. The court's conclusion that the appellee should be bound by his mistake was premised upon the fact that in competitive bidding, "[u]nilateral errors are not generally relieved against. After the bid is accepted, the bidder is bound by his error and is expected to bear the consequence of it." <u>Id.</u> at 658. By contrast here, Kowalski does not seek to reform the insurance policy. Instead, she has brought an unjust enrichment claim against the Estate, a non-party to the contract. Thus, the language from <u>Graham</u>,[5] stated in the context of a case where the appellee

---

[5]   The quoted language reads: "if one's mistake is due to his own negligence and lack of foresight and there is absence of fraud or imposition, equity will not relieve him." <u>Graham</u>, 61 So. 2d at 657.

sought to reform a construction bid, is not applicable to the facts of this case.  Indeed, in other contexts, Florida courts have permitted unjust enrichment claims based upon the unilateral mistake of one of the parties to stand where the other party received an undeserved windfall.  See Sharp v. Bowling, 511 So. 2d 363, 365 (Fla. Dist. Ct. App. 1987) (relying upon unjust enrichment to force an employee to reimburse her employer for moneys the employer had to pay the IRS as a result of an error in reporting the amount of federal income taxes withheld from the employee's wages.  Although the mistake had been a unilateral one made by the employer, the employee, who had received a tax refund from the IRS as a result of the mistake, was unjustly enriched and "[i]n equity and good conscience ... should be required to reimburse her employers.").[6]
 Accordingly, Wilson is not entitled to summary judgment on the grounds that Kowalski's unilateral mistake bars her unjust enrichment claim.

## E. Whether Kowalski is Entitled to Summary Judgment on Her Unjust Enrichment Claim.

Having rejected Wilson's arguments for summary judgment on Kowalski's unjust enrichment claim, the Court next determines whether Kowalski is entitled to summary judgment on this claim.  See Kowalski Motion at 10-14.  As stated above, to establish a claim for unjust enrichment, Kowalski must establish that she: (1) conferred a benefit on the Estate, which had knowledge of the benefit; (2) the Estate voluntarily accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the

---

[6]      Wilson attempts to distinguish Sharp on the grounds that Kowalski does not seek the premiums erroneously paid, but rather the full contract amount.  Wilson Response at 16.  The Court does not find this distinction meaningful because it ignores the fact that the Estate, like the employee in Sharp, will receive a windfall in the amount of the policy proceeds, not the premiums paid.

Estate to retain the benefit without paying for it.  See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 899 So. 2d 1222, 1227 (Fla. Dist. Ct. App. 2005).  Because the Court concludes that the undisputed record establishes each of these elements, the Court will grant summary judgment for Kowalski on her claim for unjust enrichment.

First, the Court finds that Kowalski conferred a benefit on the Estate which had knowledge of the benefit.  As discussed above, the benefit conferred on the Estate is the policy proceeds themselves.  The Court has ruled, in the July 1, 2013 Order, that the Estate is entitled to the proceeds under the express terms of the policy.  The undisputed record before the Court further reflects that Kowalski, and her husband, Edward Kowalski, were the sole source of the premium payments which led to the payment of the policy proceeds.  Affidavit of Lisa Kowalski [DE 126-1] ¶¶ 4, 8.[7]  Indeed, the Insured herself confirmed in a conversation with a Jackson representative that Lisa Kowalski was paying the premiums.  Transcript of July 18, 2010 Call [DE 126-10] at 2 ("my daughter-in-law pays the insurance on my life–but she's not listed as the beneficiary yet."); 5 ("I said, You've been paying on it, but I don't think you have the ownership on it.").[8]

_____

[7]      To introduce some doubt as to whether Kowalski and her husband paid all the policy premiums, Wilson cites to her own deposition testimony for the proposition that the Insured loaned Kowalski and Edward at least $16,000 during Edward's lifetime. Wilson Response at 3 n.5.  In addition to being speculative, Wilson's deposition testimony as to what the Insured allegedly told her regarding a loan to her son and daughter-in-law would be inadmissible hearsay.  Wilson has failed to identify any exception to the hearsay rule that the Insured's alleged statement regarding the loan would fall under.

[8]      In her response, Wilson asserts that the transcript of this telephone call would be inadmissible hearsay.  Wilson Response at 12.  While the Court disagrees with Kowalski's assertion that the statements in this transcript are not offered for the

21

Second, the undisputed record further establishes that the Estate has accepted this benefit.  This is evidenced by Wilson's participation in this litigation as personal representative of the Estate.

Third, the Court finds that under the circumstances it would be inequitable under for the Estate to retain the policy proceeds without having contributed anything towards payment of the policy premiums.  As discussed above, the record establishes that Kowalski and her husband paid all the policy premiums.  Moreover, Kowalski has stated that, after her husband's death, she continued to pay the policy premiums because she believed–albeit mistakenly–that she was both the policy owner and beneficiary. Affidavit of Lisa Kowalski [DE 126-1] ¶ 8.  Even the Insured herself acknowledged in a conversation with Jackson representatives that the policy belonged to her son and daughter-in-law and that her daughter-in-law had been paying the policy premiums. Transcript of July 18, 2010 Call [DE 126-10] at 2; 5.  As Kowalski points out, her conversations with Jackson customer service representatives indicated her unequivocal desire to become policy beneficiary.  See Kowalski Motion at 13-14 (citing transcripts). To allow the Estate to retain the policy benefits would represent a windfall to the Estate when the undisputed record before the Court reflects that none of the Insured's heirs contributed anything to the payment of the policy premiums.  See Sharp, 511 So. 2d at

_____

truth of the matter asserted, see Kowalski's Reply to Estate's Memorandum of Law in Opposition to Motion for Summary Judgment [DE 202] at 9-10, the transcript and the statements contained therein would fall within exceptions to the hearsay rule.  The transcript itself would be admissible as a business record under Fed. R. Evid. 803(6). The statements of the Insured would be admissible under Fed. 804(b)(3) as statements against interest.  The Insured qualifies as unavailable under Rule 803(a)(4).  The statements are also against the pecuniary interest of the Insured and her heirs because she indicated Kowalski's entitlement to the insurance proceeds, foreclosing that the policy proceeds should pass to her heirs.

365.  Kowalski intended and mistakenly thought that she was the policy owner and

beneficiary at the time of the Insured's death.  Thus, it would be inequitable for the

Estate to retain the policy proceeds.  Because Kowalski has established all the

elements of unjust enrichment, the Court will grant summary judgment for Kowalski on

this claim.

### F. Whether Kowalski is Entitled to Imposition of a Constructive Trust.

Both parties have also moved for summary judgment on Kowalski's request for

imposition of a constructive trust on the policy proceeds.  Kowalski Motion at 14; Wilson

Motion at 23.  Wilson argues that the Court cannot impose a constructive trust in favor

of Kowalski because a constructive trust may not be imposed when the alleged unjust

enrichment resulted from the unilateral mistake of the person seeking imposition of the

constructive trust.  Wilson Motion at 23-24.[9]  Kowalski argues that mistakes were also

made by Jackson and her husband Edward which resulted in the unjust enrichment.

Kowalski Motion at 15-18.  Kowalski also argues that Wilson's belief that Florida law

bars imposition of constructive trusts where the unjust enrichment resulted from the

unilateral mistake of the party seeking unjust enrichment is incorrect.  Id. at 18-19.

Because the Court found above that the only relevant mistakes in this case were made

by Kowalski, the Court will limit its analysis to whether Kowalski's unilateral mistake

bars imposition of a constructive trust on the policy proceeds.

Under Florida law:

---

[9]     Wilson also argues that Kowalski is not entitled to imposition of a
constructive trust because she cannot state a claim for unjust enrichment.  Wilson
Motion at 23.  Because the Court has rejected this argument above, it will not be
revisited here.

> A constructive trust is an equitable remedy available "in a situation where there is a wrongful taking of the property of another," <u>Abele v. Sawyer</u>, 750 So.2d 70 (Fla. 4th DCA 1999) or "when a confidential relationship has been abused." <u>Hutson v. Brooks</u>, 646 So.2d 276, 277 (Fla. 2d DCA 1994). "The trust is 'constructed' by equity to prevent an unjust enrichment of one person at the expense of another as the result of fraud, undue influence, abuse of confidence or mistake in the transaction that originates the problem." <u>Wadlington v. Edwards</u>, 92 So.2d 629, 631 (Fla.1957) (citation omitted). A constructive trust may be imposed against a recipient of funds who has not engaged in the wrongful conduct that justifies the imposition of the trust. <u>See Browning v. Browning</u>, 784 So.2d 1145, 1148 (Fla. 2d DCA 2001). The remedy is "an extraordinary one," subject to the discretion of the court and traditional equitable defenses. <u>Collinson</u>, 903 So.2d at 228; <u>see Provence v. Palm Beach Taverns, Inc.</u>, 676 So.2d 1022, 1025 (Fla. 4th DCA 1996).

<u>Joseph v. Chanin</u>, 940 So. 2d 483, 487 (Fla. Dist. Ct. App. 2006).  Wilson urges the Court to find that Florida law restricts imposition of a constructive trust where, as here, the alleged unjust enrichment resulted solely from the mistakes of the party seeking the constructive trust.  Wilson Motion at 24.  Wilson relies on <u>In re Estate of Tolin</u>, 622 So. 2d 988 (Fla. 1993), to establish that in order to impose a constructive trust, one party, must have benefitted from the mistake made by another party other than the party seeking imposition of the constructive trust.  <u>Id.</u> at 24-25.  Although Wilson has accurately recited the facts and holding of <u>Tolin</u>, the Court is not convinced that this case overturns the general rule that "[a] constructive trust is properly imposed when, as a result of a mistake in a transaction, one party is unjustly enriched at the expense of another."  <u>Tolin</u>, 622 So. 2d at 990 (citing <u>Wadlington v. Edwards</u>, 92 So. 2d 629 (Fla. 1957)).  Accordingly, because the Estate was unjustly enriched by Kowalski's mistaken belief that she was policy beneficiary, the Court will impose a constructive trust in favor of Kowalski on the funds currently held in the Court registry.

Even if Wilson is correct that imposition of a constructive trust is improper under

24

the facts of this case, Kowalski would still be entitled to the funds held in the Court registry.  In addition to seeking imposition of a constructive trust, the Third Amended Complaint requests "other amounts provided by law" on Kowalski's claim for unjust enrichment.  3d Am. Compl. at 8.  Because the Court has found that Kowalski is entitled to summary judgment on her unjust enrichment claim, "other amounts provided by law" would include damages.  The damages in this case would be the amount of the policy proceeds.  Thus, Kowalski is entitled to the policy proceeds even if imposition of a constructive trust is an improper remedy.

### G. Whether Kowalski is Entitled to Summary Judgment on Wilson's Affirmative Defenses.

Finally, Kowalski moves for summary judgment on Wilson's affirmative defenses. Kowalski Motion at 20-24.  The Court need not address the specific affirmative defenses here because the Court's above discussion of the various arguments raised by the parties in the Motions renders the affirmative defenses moot.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.    Third Party Defendant's Motion for Summary Judgment Regarding Plaintiff's Third Amended Complaint, Statement of Material Facts, and Supporting Memorandum of Law [DE 188] is **DENIED**;

2.    Kowalski's Motion for Summary Judgment; Rule 56 Statement of Undisputed Material Facts and Memorandum of Law in Support of the Motion [DE 190] is **GRANTED**; and

3.    The Court will enter a separate final judgment.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, on this 7th day of November, 2013.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.