IN THE UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF FLORIDA

LISA KOWALSKI,
  a Florida Resident                CASE NO.: 12-60597-CIV-COHN-SELTZER
        Plaintiff/Counterdefendant,
v.

JACKSON NATIONAL LIFE
 INSURANCE COMPANY,
 a Michigan Corporation,
        Defendant/Counterplaintiff/
        Third-Party Plaintiff,
v.

BARBARA WILSON AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
FLORENCE P. KOWALSKI,
        Third-Party Defendant.
_____/

**KOWALSKI'S RESPONSE IN OPPOSITION TO
JACKSON'S VERIFIED MOTION FOR ATTORNEYS' FEES
AND TO TAX COSTS [DE 220];
KOWALSKI'S MOTION TO DETERMINE ENTITLEMENT TO ATTORNEYS'
FEES PRIOR TO SUBMISSION ON ISSUE OF AMOUNT PURSUANT TO
LOCAL RULE 7.3(a); MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, Lisa Kowalski ("Kowalski"), files this Response in Opposition to the Verified Motion For Attorneys' Fees and To Tax Costs (the "Verified Motion") by Defendant, Jackson National Life Insurance Company ("Jackson"), seeking $78,025 in attorney's fees pursuant to §768.79, F.S., Rule 68 Fed.R.Civ.P., and Rule 1.442, Fla.R.Civ.P., based on its $1,000 Offer of Judgment [DE 220-1] (the "Offer") served on April 12, 2013. [1]

_____

[1] As attorneys' fees are not recoverable in a diversity action under Rule 68 absent a specific statute defining costs to include attorneys' fees, the substantive law of the State of Florida used to determine Jackson's entitlement to attorneys' fees is found in §768.79, F.S. *See, Tanker Management, Inc. v. Brunson*, 918 F.2d 1524, 1527 (C.A.11(Fla.), 1990). Jackson also moved for the recovery of costs in the amount of $1,708.60 pursuant to a Bill of Costs as provided for in 28 U.S.C. §1920. Rather than focusing on *di minimis* amounts, Kowalski does not contest Jackson's recovery of the amounts stated in its Bill of Costs [DE 221].

## SUMMARY OF ARGUMENT

Responding to ¶A (pg. 4) of the Verified Motion, Kowalski argues first that it should be denied on any one of the following grounds:

(1) The Verified Motion was filed in violation of the requirement of Local Rule 7.3(a).  This rule requires that "a motion for an award of attorneys' fees …shall not be filed until a good faith effort to resolve the motion, as described in paragraph (b) below, has been completed." Paragraph (b) provides a 21 day period for this good faith effort; the Motion was filed on the 8th day of this period.  Since, it imposes a sanction in derogation of common law, §768.79 should be strictly construed, and this blatant violation of the Local Rule warrants rejection of the Motion.

(2) The Offer of Judgment is fatally defective.  Although the Offer purported to dispose of "all claims" made by Jackson against Kowalski, including those arising from Jackson's misrepresentation claims,[2] if Kowalski had accepted the Offer Jackson would still have been free to assert these claims, to Kowalski's detriment, as part of Jackson's defense against the Estate's Counterclaim against it.

(3) The Offer was not made in good faith.  Far from being the disinterested stakeholder, seeking only to deposit the Policy proceeds with the Court and be discharged from the dispute, Jackson has consistently dragged its feet and attempt to frighten Kowalski into abandoning her claims. Jackson's bad faith conduct in this dispute, and its failure to provide any evidence that it made the Offer in the good faith belief that Kowalski's claims had no merit at all, establish that the Offer was not made in good faith.

If the Court rules that Jackson is entitled to a fee award, Kowalski next argues that:

---

[2]   Jackson asserted claims for fraudulent misrepresentation, negligent misrepresentation, unjust enrichment and indemnity against Kowalski, all founded on its assertion that she induced Jackson to recognize her as owner of the Policy by negligently and fraudulently misrepresenting that she had been judicially appointed as the personal representative of her husband's estate. See pages 7 to 9 below.

(1) Of the $78,025 in fees sought by the Verified Motion, $ 19,700.00 should be disallowed on the basis of specific objections which are summarized at pages 18 to 23 below and detailed in the Declaration of Charles P. Randall submitted herewith.

(2) Whatever sum remains after the Court's ruling on the specific objections should be further reduced because of the reasonableness of Kowalski's rejection of the Offer and the application of three of the standards provided for in Rule 1.442 (h)(2) of the Florida Rules of Civil Procedure.

Finally we argue that, in accordance with Local Rule 7.3(a), the court should determine entitlement prior to submission on the issue of amount because the challenges raised as to the individual fee requests made at the end of this Response may be subject to reclassification and/or be subject to additional objections which could not be identified or resolved prior to its filing. In the event the Court is inclined to grant any part of Jackson's fee request, Kowalski respectfully requests an additional period of time to attempt to resolve the outstanding issues.

I.   **THE OFFER OF JUDGMENT STATUTE**.

    A.   §768.79 (the "Statute") states in relevant part.

(7)(a) If a party is entitled to costs and fees pursuant to the provisions of this section, the court may, in its discretion, determine that an offer was not made in good faith. In such case, the court may disallow an award of costs and attorney's fees.

The Statute is punitive in nature, in derogation of the common law, requires strict construction in favor of the party against whom the penalty will be imposed, and is never extended by construction. *Sarkis v. Allstate Insurance Company*, 863 So.2d 210, 223 (Fla.2003); *Hibbard v. McGraw,* 862 So.2d 816, 820 (Fla.App. 5 Dist., 2003). The party seeking a fee award must strictly comply with the Statue and Rule 1.442 implementing it. *Diamond Aircraft Industries v. Horowitch,* 107 So.3d 362, (Fla. 2013).

The purpose of the Statute is to terminate all claims, end disputes, and obviate the need for further intervention of the judicial process. If an offer fails to effectively terminate the litigation, at least as to the issues to which it is directed, the Statute is

inapplicable. *Unicare Health Facilities, Inc. v. Mort.,* 553 So.2d 159, 161 (Fla.1989); *Eagleman v. Eagleman,* 673 So.2d 946, 947 (Fla.App. 4 Dist., 1996).[3]

The point of the statute is not to force plaintiffs into accepting unreasonable offers for fear of having to pay defendants' attorneys' fees should they refuse and ultimately obtain a lesser judgment. *James v. Wash Depot Holdings, Inc.,* 489 F.Supp.2d 1336 (S.D.Fla. 2007) *citing, Stouffer Hotel v. Teachers Ins.,* 944 F.Supp. 874, 875 (M.D.Fla.1995), "an offer of judgment or offer of settlement or the same thing by another name ought to be more than a carefully crafted, cleverly calculated, and disingenuous attempt to shift the economic burden of litigation;" *In accord, Bartley v. Kims Enterprise of Orlando, Inc.,* 2013 WL 3321901 * 4 (M.D.Fla.).

An offer that is ambiguous is invalid and not enforceable. *Hendrix v. Evenflo Co., Inc.,* 2011 WL 1299874  at *2 (N.D.Fla.)[4]; *Hibbard v. McGraw,* 862 So.2d 816, 820 (Fla.App. 5 Dist., 2003) "Because the offer of judgment statute and related rule must be strictly construed, virtually any proposal that is ambiguous is not enforceable."; *McMullen Oil Co. v. ISS Intern. Service Sys., Inc.,* 698 So.2d 372, 374 (Fla.App. 2 Dist., 1997) "An offer of judgment that contains conditions not permitted by the statute and which will not allow immediate enforcement upon acceptance is invalid;*" In accord, DiPaola v. Beach Terrace Ass'n, Inc.,* 718 So.2d 1275, 1277 (Fla.App. 2 Dist., 1998).

    B.    The bad faith exception.

If an offer satisfied the requirements of the Statute, the sole basis on which a court can disallow an entitlement to an award of attorneys' fees is if it determines that the offer was not made in good faith. *McMahan v. Toto*, 311 F.3d 1077 (11th Cir.2002); *Pickett v. R.J. Reynolds Tobacco Co.,* 2013 WL 2431841 at *2 (M.D.Fla. 2013).

---

[3] *Eagleman's* continued vitality is attested by the reliance placed on it by recent decisions. *See, Bartley v. Kims Enterprise of Orlando, Inc*., 2013 WL 3321901 at *9 (M.D.Fla.); *Hendrix v. Evenflo Co., Inc*., 2011 WL 1299874 at *2 (N.D.Fla.); *James v. Wash Depot Holdings, Inc.,* 489 F.Supp.2d 1336, 1340 (S.D.Fla.,2007).

[4] Although the *Hendrix* court dealt with the issue of an ambiguous offer in the context of Rule 1.442, it clearly stated in FN6 that the 11th Circuit considered the particularity aspect of Rule 1.442 to be substantive citing in support *McMahan v. Toto*, *infra*.

Deciding whether a nominal offer of settlement was served in good faith is not a simple one. The relevant Florida decisions were recently reviewed by the 1st D.C.A. in *Arrowood Indemnity Company v. Acosta, Inc.,* 58 So.3d 286, 289 (1st D.C.A. 2011). The Court began by noting that it had held that "in the context of a nominal offer of judgment, … where the offeror has a reasonable basis to believe that exposure to liability is minimal, a nominal offer is appropriate, [5] the 4th D.C.A. had held "that a reasonable basis for a nominal offer exists only where the undisputed record strongly indicates that offeror had no exposure in the case."[6] It then reviewed cases from other District Courts of Appeals, finally concluding that both objective factors and the offeror's subjective belief that that the claims for which it offered a nominal settlement had no chance of success must be considered:[7]

> Whether the offeror has a reasonable basis to support the offer is "determined solely by the subjective motivations and beliefs of the offeror." *Wagner v. Brandeberry,* 761 So.2d 443, 446 (Fla. 2d DCA 2000); *Weinstein,* 747 So.2d at 1021. In making this determination, the trial court is not restricted to the testimony of the offeror attesting to good faith; rather, the court may properly consider objective evidence of facts and circumstances that suggest whether the offeror made the offer with subjective good faith. *Gurney v. State Farm Mut. Auto. Ins. Co.,* 889 So.2d 97, 99 (Fla. 5th DCA 2004). Several types of objective evidence have been found relevant to a finding of good faith. *See, e.g., City of Neptune Beach v. Smith,* 740 So.2d 25, 27 (Fla. 1st DCA 1999) (holding that relevant objective factors include amount of each offer and potential liability offeror faced at time offer was made); *Fox v. McCaw Cellular*

---

[5] Citing *Zachem v. Paradigm Properties Mgmt. Team, Inc.,* 867 So.2d 1263 (Fla. 1st DCA 2004); *City of Neptune Beach,* 740 So.2d at 27 ("[T]he obligation of good faith merely insists that the offeror have some reasonable foundation upon which to base an offer." (quoting *Schmidt,* 629 So.2d at 1039).

[6] Citing *Sharaby v. KLV Gems Co., Inc.,* 45 So.3d 560 (Fla. 4th DCA 2010).

[7] Because the trial court had considered only the objective factors, and had given no weight to whether the offeror "had a subjectively reasonable belief on which to base its offer" the denial of attorneys' fees was reversed and the case was remanded "for the trial court to apply the proper standard and provide specific findings as to whether [the offeror] had a reasonable foundation upon which to base its $1000 offer of judgment." *Arrowood,* 58 So.3d at 390.

*Commc'ns of Florida, Inc,,* 745 So.2d 330, 333 (Fla. 4th DCA 1998) (holding that the trial court may consider the totality of the whole case record when determining whether good faith was present).

The rule stated in *Arrowood*, that both objective factors in the record and evidence of subjective intent must be considered, was recently applied in *Pickett v. R.J. Reynolds Tobacco Co*. 2013 WL 2431841 at *4 (M.D.Fla.).

II.   **THE VERIFIED MOTION SHOULD BE DENIED BECAUSE IT WAS FILED IN VIOLATION OF LOCAL RULE 7.3, AND THE CASES REQUIRE STRICT COMPLAINCE WITH THE APPLICABLE RULES FOR IMPOSITION OF A SANCTION.**

Jackson's Verified Offer was filed in violation of Local Rule 7.3 which requires that the motion be filed only after a 21 day negotiation period had lapsed. Jackson filed its Verified Motion on December 3, 2012, 8 days after serving the Draft Motion on the undersigned. The Certification of Counsel contained in the Verified Motion [DE 220, pg. 11] is not factual. At no time prior to the filing of the Verified Motion did the parties confer to seek resolution of the attorneys' fee and cost claims. Further, when the undersigned called to opposing counsel's attention that the Verified Motion was filed in violation of the Local Rule, Jackson filed a Notice Of Filing Corrected Certification Of Counsel [DE 226] reaffirming the Verified Motion and attempting to provide some "justification" for having violated the Local Rule. Even in this "Corrected" filing, Jackson omitted the following language from its Certification that it had previously represented to the undersigned was meant to be included – *"In light of the meet and confer deadlines in the local rules, Jackson and Plaintiff request that the court provide guidance with respect to the date by which Plaintiff shall file a response to Jackson's Motion for Attorney's Fees."*

If there were any doubt that the timing provided by Local Rule 7.3 is procedural, and therefore controlling in this diversity case, it would be removed by the fact that the last sentence of Local Rule 7.3(b) provides that the 21 day period does not apply if a federal statute provides a shorter time for making the fee motion then the 60 days set out in rule 7.3 (a), but makes no reference to a similar conflict with a state statute.

6

III.    **THE VERIFIED MOTION SHOULD BE DENIED BECAUSE ACCEPTANCE OF JACKSON'S OFFER WOULD NOT HAVE ENDED THE LITIGATION OF ITS CLAIMS AGAINST KOWALSKI.**

    A.    <u>Jackson's Offer of Judgment</u>

The operative language of Jackson's Offer [DE 220-1] states in relevant part:

> 1.    This Offer of Judgment is intended to **resolve all claims between Jackson and Plaintiff**, which were raised in, or which could have been raised in the Lawsuit, including Plaintiff's breach of contract claim against Jackson and Jackson's claims against Plaintiff for fraudulent misrepresentation, negligent misrepresentation, indemnity, and unjust enrichment. <u>(Emphasis added)</u>.

Simply stated, Jackson's Offer contemplated the termination of Kowalski's breach of contract claims raised against it as well as its claims against Kowalski for fraudulent misrepresentation, negligent misrepresentation, indemnity, and unjust enrichment that it raised against her in the Lawsuit. However, for the reasons stated below, had Kowalski accepted the Offer, Jackson would still have been able to try to prove these claims against her at the trial of the unsettled dispute between Kowalski and the Estate as well as the Estate's claims against Jackson.

    B.    <u>Jackson's claims.</u>

Jackson's claims against Kowalski are found in its Answer and Affirmative Defenses to the Estate's Third-Party Counterclaim [DE 90] which contains its Crossclaim against Kowalski.[8] Count I of the Crossclaim (pg. 17) sought damages against Kowalski for Fraudulent Misrepresentation, Count II (pg. 18) sought damages against Kowalski for Negligent Misrepresentation, Count III (pg. 18) sought damages against Kowalski for Indemnity, and Count IV (pg. 19) sought damages against Kowalski for Unjust Enrichment.

Jackson raised these *claims* in its Crossclaim seeking money damages against Kowalski. Additionally, Jackson incorporated these identical *claims* in its Eleventh

---

[8] Jackson stated the Crossclaim allegations made against Kowalski in its Answer to the Estate's Counterclaim [DE 90] and repeated them in its Counterclaim found in its Answer to Kowalski's Second Amended Complaint. [DE 98]. Both the Crossclaim and the Counterclaim are identical claims made by Jackson against Kowalski.

Affirmative Defense contained in its Answer to the Estate's Counterclaim [DE 90, pg. 13]. While the Offer recites its intent "to resolve all claims *between* Jackson and Plaintiff," accepting the Offer would have had no effect upon these same claims brought in Jackson's Eleventh Affirmative Defense to the Estate's Counterclaim seeking money damages against it. Thus, acceptance of Jackson's Offer would have had only the limited effect of precluding it from obtaining money damages against Kowalski; acceptance would not have barred Jackson from asserting the same claims against Kowalski as part of its defense to the Estate's claims against both Jackson and Kowalski arising from the same set of operative facts.[9]

  C.  The Estate's claims.

  The Estate's claims against Kowalski and Jackson are contained in the Third Party Defendant's Answer And Affirmative Defenses To Third-Party Complaint, Counterclaim, and Crossclaim. [DE 75]. Count I [¶65, pg. 16] is a Declaratory Action against both Kowalski and Jackson, Count II [¶71, pg. 18] sought damages against Kowalski for Unjust Enrichment, Count III [¶84, pg. 21] sought damages against Kowalski for Conversion, and Count IV [¶99, pg. 23] sought damages against Jackson for Breach of Contract. The Estate did not bring claims for fraud or negligence against Kowalski relating to the $50,000 loan, as it would have been impossible for it to have alleged that Kowalski owed it a duty of any sort as would have been necessary for it to have properly asserted these tort claims on its own behalf. This is true because the Estate didn't come into being until the insured, Florence, had died. Florence, having no interest in the Policy that she neither owned nor paid anything for, could not have objected to Kowalski's taking of a $50,000 loan against the future death benefit that wouldn't be paid as long as she was alive.[10]

---

[9] The Estate's claims against both Jackson and Kowalski arose from its assertion that it suffered damages when Kowalski was unjustly enriched by Jackson's making her the $50,000 loan. Jackson's claims against Kowalski arose by virtue of the allegations that it was exposed to the Estate's claims because it made the $50,000 loan to her. Thus, all claims against Kowalski asserted by both the Estate and Jackson arose from the identical set of operative facts.

[10] The insured, Florence Kowalski, not only knew and approved of Kowalski's attempt to change the beneficiary of the Policy to herself but she actually assisted her by placing

D.     Jackson's Offer of Judgment would not have affected its claims against
       Kowalski raised in its Eleventh Affirmative Defense.

Jackson's Eleventh Affirmative Defense contained in its Answer to the Estate's Counterclaim reads in its entirety:  "Jackson incorporates herein the allegations of its Crossclaim, and seeks to set-off any claims for damages including attorneys' fees and costs."  [DE 90, pg. 13].

Although Jackson's Crossclaim directed against Kowalski was fairly encompassed within the Offer's "claims between Jackson and Plaintiff" description, the Offer did not include withdrawing these identical claims of fraud, negligence, indemnity, and unjust enrichment asserted as an Affirmative Defense against the Estate's Counterclaim against Jackson.

Assume for the sake of argument that Kowalski had accepted Jackson's Offer, the direct claims between Jackson and Kowalski had been dismissed and the remaining claims went to trial. The claims that the Estate would present before the jury would be: (1) it was entitled in Count I to a declaration that, among other things, the Policy's ownership change to Kowalski was improper (¶69 (h)), that she must pay the Estate the amount of the loan plus interest "for a total of $51,238.48" (¶69 (i)), and that it was entitled to "payment of the full death benefit" being held in the Registry (¶70); (2) it was entitled in Count II to monetary damages against Kowalski resulting from her unjust enrichment in receiving the $50,000 loan from Jackson; (3) it was entitled in Count III to monetary damages against Kowalski for her conversion of the $50,000 loaned to her by Jackson; and (4) it was entitled in Count IV to monetary damages against Jackson for its breach of contract for its making the $50,000 loan to Kowalski.

Jackson would defend against the Estate's claims by asserting that Kowalski had fraudulently and/or negligently misrepresented to it that she was the court appointed personal representative, and, as a result, it suffered a $50,000 loss that Kowalski was unjustly enriched by. Kowalski would defend on the basis that Jackson was fully within its rights in recognizing her as the owner of the Policy and in making the $50,000 loan.

---

two calls directly to Jackson's service center on Kowalski's behalf. [See DE 126-8, DE 126-10].

These are the exact claims against Kowalski that were the subject of Jackson's Offer. Thus, Kowalski would not have been relieved of Jackson's claims by accepting the Offer and its stated "intent" to "resolve all *claims* between Jackson and Plaintiff" would not have occurred. Kowalski would have been forced to litigate the exact same case, against the exact same party as the one that would have allegedly been settled by her acceptance of Jackson's Offer, with the exception that her breach of contract claim against Jackson would have been dismissed and any judgment against her would be only in favor of the Estate, not in favor of Jackson and the Estate. Further, Jackson's continued prosecution of its claims against Kowalski would not only benefit its defenses against the Estate's claims, but would, among other things, provide the Estate with the ability to argue to a jury that the additional tort claims of fraud and negligence tainted Kowalski's defense to its claims thereby increasing the likelihood that a jury would find for it and against Kowalski.

Thus, Jackson's Offer, failing to include the withdraw of its Eleventh Affirmative Defense in the description of those claims offered to be dismissed, ensured that the fraud, negligence, indemnity and unjust enrichment claims would continue to be litigated by it against Kowalski to the benefit of the Estate by alleging claims that the Estate could not itself have brought. Jackson's Offer "to resolve all claims between Jackson and Plaintiff" was defective [11] and, as shown below, ineffective to impose the punitive effect of shifting attorneys' fees as imposed by the Statute.

Jackson may attempt to rebut this argument by asserting that the offer did indeed include withdrawal of the Eleventh Affirmative Defense to the Estate's Counterclaim. Such an attempt would be futile, even if the Court were to agree with this very strained reading of the Offer. At best, this would mean that the Offer was ambiguous and, under the cases cited on page 4 above, an ambiguous offer is not valid.

IV.   **JACKSON'S OFFER WAS NOT MADE IN GOOD FAITH**.

The burden of proving that Jackson's Offer was not made in good faith is on Kowalski. The difficulty in proving this negative is eased by the ability of the Court to

---

[11] As used herein, the term "defective" may be synonymous with the term "ambiguous," both connoting an irregularity or shortcoming with the Offer making it inoperative to invoke the punitive nature of the statute.

look at the entire record of the case in order to examine the facts and circumstances surrounding the offer.[12] The facts and circumstances surrounding Jackson's Offer shows the lack of good faith in making the Offer and is evidenced by: (1) the nature of Jackson's counterclaims against Kowalski; (2) the making of an Offer that didn't include the withdraw of the Eleventh Affirmative Defense; (3) Jackson's failure to timely initiate an interpleader action; (4) Jackson's seeking excessive attorneys' fees for the interpleader when it was not entitled to fee, (5) Jackson's filing of its Rule 11 Motion; and (6) Jackson's filing its Verified Motion in violation of Local Rule 7.3.

A.      The objective evidence of Jackson's bad faith.

1.   Jackson's claims against Kowalski demonstrate its bad faith.

Jackson's claims against Kowalski were spurious at best. The essence of its argument is that Kowalski's third and final attempt at amending the Policy's ownership and beneficiary interests via the third Life Service Request Form [DE 126-16],[13] which was accompanied by three pages of her late husband's will, constituted her attempt to defraud the insurer by falsely representing that she was the probate court's appointed personal representative of her husband's estate. [*See,* DE 90, ¶¶23, 24, pg. 16]. Even though she was instructed by Jackson in writing to submit a "[C]opy of last will and testament *or* probate papers naming the executor for the deceased's estate" and "[A] Service Request form completed by the executor of the estate and notarized," [DE 90-5, DE 90-6], Kowalski submitted nothing from a probate court, a non-notarized change form and only portions of the will. [DE 90-6, pg. 1-10]. Yet, having acted on this submission, despite these self-evident shortcomings, Jackson alleged that Kowalski had defrauded it [DE 90, pg. 17], was negligent and liable to it under "the wrongful act doctrine" [DE 90, pg. 18], owed it a duty of indemnification [DE 90, pg. 18], and was unjustly enriched by her receipt of a $50,000 loan which she took out against the Policy's

---

[12] *See, Fox v. McCaw Cellular Comm. Of Fla., Inc.*, 745 So.2d 330, 333 (Fla.App. 4th Dist., 1998).

[13] The Third Life Service Request form [DE 126-16] is also Exhibit F to Jackson's Crossclaim against Kowalski [DE 90-6], and was preceded by her two earlier attempts to effectuate the changes to the ownership and beneficiary designations as shown in DE 126-14, DE 90-2 (Crossclaim Ex. B); DE 126-15, DE 90-4 (Crossclaim Ex. D).

cash value which had accumulated during the 20 years she and her husband paid the premiums. [DE 90, pg. 19].

Kowalski moved to dismiss Jackson's Crossclaim [DE 92] on the basis that "[T]he documents attached to the Jackson Pleading … demonstrate that Lisa Kowalski never made any such representation, that the documents she submitted to Jackson were submitted in a good faith effort to comply with its written requests, and that, if Jackson's recognition of Lisa Kowalski as the owner of the Policy was based on a belief that her husband's will had been probated and she had been appointed as its executor, that belief was the result of gross negligence on Jackson's part, and not any misrepresentation by Lisa Kowalski." [DE 92, ¶3, pg. 2]. Jackson's Response simply asserted "[S]uch arguments are not appropriate for the Court's consideration on a motion to dismiss." [DE 100]. This Court agreed with Jackson's arguments reasoning that the Crossclaim adequately plead the requisites to support its causes of action, which was sufficient to survive Kowalski's Motion To Dismiss, "even if it appears that a recovery is very remote and unlikely." (Citations omitted). [DE 108, pg 4]. The next significant event relating to Jackson's Crossclaims occurred during the deposition of Jackson's Director, Jan Reeves.

In Ms. Reeves' deposition, taken May 3, 2013, the following exchange took place [DE 126-20, pg. 25-27]:

Q. Okay. Does the executor as it is referred to in bullet point number 3 – does the executor need to be appointed by a Probate Court as the executor of the – of the owner's estate in order to sign the life-service request form?

A. Well, we would use the will that we received to – and review the will to see who was noted as the executor and that's what we would accept.

Q. Okay. So the will does not have to be submitted to the Probate Court in order for Jackson to effectuate a change of ownership to the new owner – [Objections omitted] -- correct?

A. That's what the requirements say.

Q. Okay. Have you ever been involved in a circumstance that you can remember where a life-service request form was executed by the purported individual who's named in a will and Jackson has come back and demanded that the will be submitted to probate in order to effectuate a change of ownership? [Objections omitted]

A.  I have not.

Q.  Okay. Ever hear of anything like that?

A.  I have not.

Q.  Okay. Your testimony is as far as you know Jackson's policy is to take on
    face value the designation of that individual who's named as the executor
    in a will of the individual who's died, who's owned the policy, and that's
    as far as Jackson really is concerned with as far as that person's authority
    to effectuate the life-service request form?

A.  That's correct.

Rather than dismissing its claims against Kowalski, after it became obvious that its claims against her were patently false, Jackson continued in its bad faith conduct by continuing in the prosecution of its Crossclaim until it moved to dismissed them *without prejudice* three (3) months later, on August 12, 2013. [DE 176]. Jackson's Crossclaim against Kowalski was without any factual support whatsoever and was continued in bad faith well after the time when it became obvious that it should be abandoned. Its Offer to dismiss its claims was nothing more than an offer to dismiss Kowalski's breach of contract claims against it for $1,000, while reserving to itself the opportunity to continue litigating its claims against her pursuant to the Eleventh Affirmative Defense.

In a similar fashion, the Estate's claims against Kowalski were equally baseless and merely formed a pretense to assert a breach of contract claim against Jackson in order to provide Jackson with grounds for its Crossclaims against Kowalski. The relevant pleading sequence was as follows: (1) Kowalski filed her First Amended Complaint against Jackson [DE 30] for a single count that sought a declaration that she was the beneficiary of the Policy; (2) Jackson filed a Counterclaim and Third-Party Complaint against Kowalski and the Estate seeking a declaration that it be allowed to interplead the death benefits and be "discharged from all liability" under the Policy [DE 47, pg. 10]; (3) Jackson filed its Verified Motion To Deposit Life Insurance Policy Proceeds Into The Court Registry And To Be Dismissed From Action [DE 50] seeking attorneys' fees

awarded for its interpleader action [DE 50, pg. 9] [14]; (4) the Estate filed its Counterclaim against Jackson and Crossclaim against Kowalski [DE 75]; (5) the Court issued its Order Granting In Part And Denying In Part Defendant's Verified Motion To Deposit Life Insurance Proceeds Into The Court Registry [DE 79][15]; (6) Jackson filed its Crossclaim against Kowalski [DE 90].

The Estate claimed in its Counterclaim that Florida probate law mandated that Edward Kowalski's will be probated before Jackson had the authority to amend the Policy naming Kowalski as the owner. [DE 75, ¶¶53, 54].   The Estate's claims were similar to those of Jackson's and merely provided an opportunity to whipsaw Kowalski with the claims addressed in detail above. The bad faith nature of the coordinated actions by both Jackson and the Estate is evident from the fact that neither the Estate nor Jackson ever filed any pleadings directed against each other's causes of action.   Despite the facial weakness of the Estate's allegations against Jackson, that the only summary judgment motions made by these parties were directed against Kowalski and were essentially identical, and that the Estate's claims against Jackson very generously settled[16] immediately after the Court issued its Order Granting In Part And Denying In Part Wilson's Motion For Summary Judgment; Granting Jackson's Motion For Summary Judgment, And Denying Kowalski's Motion For Partial Summary Judgment. [DE 157].

---

[14] Jackson served upon the undersigned its draft Verified Motion For Attorneys' Fees and Costs [see Jackson's *Notice of Serving Draft Verified Motion For Attorneys' Fees* [DE 63] wherein it was seeking $59,360 in attorneys' fees and $5,767.96 in costs for filing its interpleader action.

[15] The Court specifically found that Jackson was not entitled to attorneys' fees  because it moved to interplead  the  death benefits  only after  it was  sued for it [DE 79, pg. 5].   Kowalski initiated her action against Jackson on April 3, 2012, whereas Jackson waited until November 27, 2012 before it moved for an order to interplead the death benefits into the Court Registry [DE 50]. The Insured died on February 4, 2011, fourteen (14) months before Kowalski sued Jackson, and twenty-two (22) months before Jackson moved to interplead the death benefits into the Registry.

[16] *See* DE 159, Notice Of Settlement, filed July 3, 2013, that resulted in Jackson's $25,000 settlement payment to the Estate.  Actually, it appears from the time charges submitted in support of the Verified Motion that the settlement was agreed upon in principle on May 6, 2013, long before it was disclosed to the Court or to Kowalski.

2.      Jackson's failure to include in its Offer the withdrawal of its Eleventh Affirmative Defense is a further indication of its bad faith.

Kowalski will not repeat here her contentions that Jackson's Offer, even had she accepted it, would not have resulted in the termination of the claims it made against her because of its Eleventh Affirmative Defense. Suffice it to say that Jackson's failure to include an offer to withdraw its Eleventh Affirmative Defense was no oversight but was done in furtherance of its efforts to intimidate and coerce her into withdrawing her claims against it; coercion that included the threat to the undersigned by way of Jackson's Motion For Sanctions pursuant to Rule 11. [DE 123].

3.      Jackson's failure to timely interplead the death benefits is a further indication of its bad faith.

The insured died February 4, 2011. Jackson soon became aware of competing claims to the death benefits when Barbara Wilson filed her Life Insurance Claim Form on February 26, 2011 [DE 126-5], and Kowalski filed her Life Insurance Claim Form on April 20, 2011 [DE 126-2].

On April 3, 2012, fourteen (14) months after the Insured's death, Kowalski filed her action against Jackson. [DE 1]. On July 27, 2012, seventeen (17) months after the Insured died, Jackson took its first action to interplead the Policy proceeds [DE 27].[17]

After the death of its Insured, and up to the point when it filed its Motion for interpleader, Jackson's only attempts known to Kowalski to resolve the death claim was Jackson's mailing to Kowalski a series of identical form letters requesting documents.[18] No letter from Jackson either to Kowalski or Wilson telling them of any intention to bring an interpleader action has been produced in this action.

---

[17]    This was Jackson unopposed motion to extend its time to respond to the First Amended Complaint until after a personal representative was appointed for Florence Kowalski's estate, who could be served with its proposed counterclaim and third party complaint seeking interpleader.

[18]    As Jackson described in its Motion For Summary Judgment On Plaintiff's Lisa Kowalski's Second Amended Complaint, [DE 121, ¶41, pg. 12], "Jackson sent Plaintiff at least sixteen letters including on April 29, 2011 … and January 30, 2013 advising Plaintiff that she needed to submit certain documents in connection with the claim under the Policy." Many of these letters were mailed Kowalski after she initiated her litigation against Jackson.

4. <u>Jackson's seeking excessive attorneys' fees in connection with the interpleader is a further indication of bad faith.</u>

While its interpleader motion was pending, Jackson served notice that it intended to seek $59,360 in attorneys' fees in connection with the interpleader. [DE 63]. Jackson is in the business of litigating life insurance claims and can be assumed to have known that, as the Court pointed out in denying Jackson's request that the Court retain jurisdiction to award it fees in connection with the interpleader, "a plaintiff in interpleader is not entitled to attorneys' fees when the interpleader action is brought after he has been sued by one of the defendants in the interpleader proceedings." [DE 89, pg. 5]. Its threatening to claim such a fee, particularly such an excessive fee, is another instance of bad faith.

5. <u>Jackson's Rule 11 Motion is a further indication of its bad faith</u>.

On May 17, 2013, Jackson filed its Motion For Summary Judgment directed against Kowalski's breach of contract claim. [DE 121]. On the same day, Jackson filed its Motion For Sanctions pursuant to Rule 11 against the undersigned. [DE 123].

Jackson's Rule 11 Motion is a combination of the claims made in its Opposition to Kowalski's Motion For Summary Judgment [DE 130] as well as a repetition of those claims made in its own Motion For Summary Judgment [DE 121]. Jackson's Motion interestingly cites to the case *Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir. 1991), *"when it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest."* Had Jackson taken to heart the *Avirgan* holding it would have dismissed its Crossclaims against Kowalski immediately after the deposition of Ms. Reeves. But that was not its purpose; its purpose was to cause additional and unnecessary expense by forcing the undersigned to respond to its Rule 11 Motion at the time when it was necessary to respond to the summary judgment motions filed by it and the Estate. The Court's Order Denying Jackson National Life Insurance Company's Motion For Sanctions summarily denied Jackson's Motion holding "the record before the Court does not establish that Kowalski's counsel's actions were objectively unreasonable or vexatious, or that they proceeded with malicious purpose or intent." [DE 158, pg. 4].

6. <u>Finally, Jackson's filing its Verified Motion in disregard of waiting period required by Local Rule 7.3 is a further indication of its bad faith</u>.

Even if the Court does not find that Jackson's premature filing of the Verified Motion requires that it be denied, its violating Local Rule 7.3(a) and (b) by filing the Verified Motion without even an attempt to resolve the matter as required by these Rules is part of the totality of the circumstances that this Court is required to take into account pursuant to *Fox*, supra at 333, "We stress that the question of good faith in making an offer under section 768.79 involves an inquiry into the circumstances shown by the entire record of the case," in deciding whether or not the Offer was made in good faith.

B.   <u>The lack of any evidence that Jackson had a reasonable subjective belief that Kowalski's claims had no chance of success.</u>

Jackson's Verified Motion [DE 220, pg. 5] contains the following statement:

"Jackson's proposal was made in good faith. '[T]he obligation of good faith merely requires that the offeror have a reasonable foundation on which to base the offer.' (Citation omitted.) 'The question of whether a proposal was served in good faith turns *entirely* on whether the offeror had a reasonable foundation upon which to make his offer and made it with the intent to settle the claim against the offeree should the offer be accepted.' (Citations omitted.) Jackson easily meets the requirements to establish the good faith of its offer. Accordingly, Jackson is entitled to an award of attorneys' fees and costs in its favor from the date of service of the offer. (Citations omitted.)"

Aside from this conclusory statement, there is nowhere in Jackson's Verified Motion, in the Declaration of Farah Bridges submitted in support of the Motion [DE 220-2] or in the Offer itself any evidence that, at the time it made its $1,000 nominal Offer to Kowalski Jackson had any reasonable basis for believing that Kowalski no chance of succeeding with the claims which the Court had granted Kowalski leave to present in her Third Amended Complaint. [DE 94].

C.   <u>Conclusion as to bad faith.</u>

Applying the standard stated by the 1st D.C.A in *Arrowood* and applied by the Middle District in *Pickett* (discussed at pages 4 to 6 above), Jackson's pattern of bad faith

conduct coupled with the absence of any evidence that Jackson had a reasonable basis for believing Kowalski's claim to be without merit disqualifies it for an attorney fee award.

## V.    **SPECIFIC OBJECTIONS**.

There are specific charges totaling $19,700.00 which are not properly allowable. They are shown on the hand-written summary ("Summary") attached to the Declaration of Charles P. Randall followed by detailed reference to the Sterns Weaver invoices "Bates stamped" on the lower right hand corner, beginning with the designation "1 JAX INV," and continuing for the 42 pages of detailed time. The Summary is organized into the following eight (8) categories: Motion for Final Judgment ("MFJ"); Estate related Claim ("EC"); Redacted ("RD"); Settlement ("S"); Verified Motion ("VM"); Summer Associate ("SA"); Rule 11 Motion ("R11"); and Clerical ("CL"). Opposite the amounts of money Jackson is claiming relating to each of these 8 categories is a number enclosed by a hand written box which corresponds to the Bates stamped page number where the time entry is found.[19]

    A.    Fees relating to Jackson's unsuccessful motion to enter a separate final judgment dismissing Lisa's contract claims amounting to $8,226.00.

This category includes work described as relating to the dismissal of Jackson's counterclaim, preparation of or research for its "motion for entry of final judgment," or made at a time when the only work the attorneys' were apparently performing related to either the Motion For Entry Of Final Judgment [DE 177] or the Verified Motion for fees [DE 220]. Further, the only reason Jackson sought the dismissal of its claims against Kowalski was to make it possible to file for the entry of a separate judgment which wouldn't be possible as long as claims against Kowalski remained pending. In any event, incurring a sum totaling $8,226.00 would be unnecessary for a simple dismissal of its remaining claims against Kowalski. At the time the motion for the entry of a separate

---

[19] Thus, the first item on the Summary description, a charge for $68.00 for Jackson's Motion For Judgment ("MFJ" column), is found on page "30 JAX INV" opposite the hand written inscription "(MFJ)" shown on the right side margin of the contested entry.

judgment [DE 177] was made on August 13, 2013,[20]  the only issues remaining in the case were those between the Kowalski and the Estate, the Estate's Motion to Dismiss the Third Amended Complaint [DE 171] had been filed, and the Court had ordered that dispositive motions with respect to the Third Amended Complaint had to be filed within 10 days of its decision on that Motion. [DE 174].  Moreover, the resolution of any issues requiring a trial was set for the two week period beginning November 15, 2013.  [DE 165].  Thus, the benefit which Jackson could have derived from making the Motion was the ability to make its attorneys fee motion a little earlier, yet Jackson's counsel apparently thought it wise to invest over $8,000.00 of attorney and paralegal fees in making it. Kowalski disputes this investment of time in that the subject matter was clearly contrary to the "extraordinary" showing Jackson needed to make for such relief and the Court found that the Motion "failed to demonstrate that there is 'no reason to delay' entry of final judgment," as is required by Fed.R.Civ.P. 54(b).  [DE 194, pg. 2.]

This category should be disallowed because, as the U.S. Supreme Court stated while dealing with another fee shifting statute, no fee should be awarded for "hours that were not "reasonably expended" and that there are "other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley v. Eckerhart*, 461 U.S. 424 (1983).   Not only was it not reasonable for Jackson to expend $8,226.00 on this Motion, but the effort failed produce the desired result.

      B.    <u>Fees Jackson incurred relating to the claims brought against it by the Estate or in responding to the Estate's discovery</u>.

Kowalski has described in detail above the separate claims the Estate made against her as opposed to the claims it made against Jackson. The attorneys' fees Jackson incurred in defending against the Estate's claims is not an expense that should be borne by Kowalski, especially given the fact that Jackson and the Estate had apparently settled these claims even before the settlement Notice [DE 159] was filed, immediately after the

---

[20] Kowalski filed a Response in Opposition on 09/03/2013 [DE 184], Jackson filed a Response in Support on 09/13/2013 [DE 191], and the Court issued its Order Denying the Motion For Final Judgment on 09/25/2013 [DE 194].

Court's Order on the parties' summary judgment motions [DE 157].[21] Kowalski objects to time Jackson spent dealing with the Estate's claims, especially given the fact that the parties' guise of prosecuting independent claims against each other is compromised by the fact that they already had agreed to a settlement at the time the litigation between them required discovery responses.[22]

> C.   Fees, amounting to $1,542.50 where the description of the work done was redacted to the extent that it is impossible to know whether the work done was properly compensable under § 768.79.

While Rule 7.3(a) preserves the moving parties the right to shield "privileged, immune or protected material," these redactions leave no basis for Kowalski, or the Court, to judge whether the entry in question related to an issue for which a fee is properly allowable. Had Jackson complied with the Rule's requirement that it confer in good faith prior to filing its Motion, it is possible that Jackson could have given us enough of an idea of what this time was spent on and whether it is properly recoverable against Kowalski. Its failure to afford us this opportunity to do so by its filing the Verified Motion [DE 220] is further reason why this $1,542.50 should be disallowed.

> D.   Jackson's attorneys' fees incurred in the settlement with the Estate should not be allowed to be recoverable against Kowalski.

Summary column "S" contains the time entries Jackson's attorneys apparently incurred in settling the Estate's claims. The $1,970.00 fees incurred by Jackson's settlement with the Estate is not properly attributable to Kowalski's breach of contract claim against Jackson and should be denied.

> E.   Jackson's attorneys' fees incurred in preparing and filing its Verified Motion For Attorneys' Fees And To Tax Costs should be denied.

---

[21] The settlement between Jackson and the Estate has been of concern since it was first announced by Notice [DE 159]. The first time entry relating to a "settlement" between the attorneys for Jackson and the Estate is found on Bates stamped page "6 JAX INV" for 04/25/2013. Kowalski has marked the time Jackson's attorneys spent associated with the Estate's Claims as ("EC") and the accumulated time spent is contained on the Summary while the time Jackson allegedly spent directly relating to the settlement is referenced as ("S") on the Summary.

[22] For example, see the description on 10 JAX INV for 05/05/13 "Review and revise Jackson's responses to request for admissions." Kowalski didn't serve upon Jackson any Requests For Admission. See also, 11 JAX INV for 05/08/13, 05/13/13 and thereafter.

Summary column "VM" contains the time entries Jackson's attorneys allegedly incurred in the preparation of its premature Verified Motion For Attorneys' Fees and To Tax Costs, in the amount of $2,359.00, which should be denied for the same reasons that $8,226.00 incurred in preparation of the Motion For Final Judgment should be denied. In addition, pursuant to the Declaration of Farah Bridges described immediately below, fees incurred in the preparation of its Verified Motion are not being requested.

      F.    <u>Fees which Jackson says it is not claiming, but which are included in its tabulation of charges.</u>

The Declaration of Farah Bridges submitted in support of the Motion states that "Jackson is not requesting fees in connection with work performed relating to Jackson's Rule 11 Motion for Sanctions, its settlement with the Estate, or its Verified Motion for an Award of Attorneys' Fees and Costs." DE 220-2, pg. 2, n. 1. In the invoices submitted in support of its Motion, Jackson has lined through some, but not all, of its charges for services in these categories, and deducted the associated time from the amounts it is claiming.   However, there are charges in each category which are not lined out and not deducted, as follows:

| | |
|---|---|
| Rule 11 Motion ("R11") | $ 150.00 |
| Jackson's Clerical ("CL") | 1,075.00 |
| Jackson's Summer Associate | 40.00 |
| | _____ |
| Total | $1,265.00 |

This $1,265.00 of claimed fees should be disallowed as Jackson's supporting declaration states they would be. As to the fees claimed for clerical work performed by paralegals, §57.104, F.S., allows inclusion of work done by "legal assistants"[23] only

_____

[23]   The cited section defines "legal assistant" as "a person, who under the supervision and direction of a licensed attorney engages in legal research, and case development or planning in relation to modifications or initial proceedings, services, processes, or applications; or who prepares or interprets legal documents or selects, compiles, and uses technical information from references such as digests, encyclopedias, or practice manuals and analyzes and follows procedural problems that involve independent decisions."

where they contributed nonclerical, meaningful legal support to the matter involved." Work such as "Continue preparing hearing notebooks and index regarding Jackson's motion for summary Judgment" [22 JAX INV, 06/17/13 claiming $350.00] and "prepare cross reference chart of all trial exhibits listed by Plaintiff, Estate and Jackson," [25 JAX INV, 06/25/13 claiming $237.50] cannot be described as "nonclerical" and all of them should therefore be disallowed. As to the fees by a summer associate amounting to $40.00, some of the summer associate's time was not included in the amount requested, other portions of his time was.  None should have been. The motion does not document that the work done by the summer associate met the requirements of §57.104. F.S. Moreover, Local Rule 7.3(a)(5) requires that a motion for attorneys' fees provide "the identity, experience and qualifications of each timekeeper for whom fees are sought;"  no such information about  the summer associate was provided, other than his name.  We do not know, for instance, whether he had completed one or two years of law school, or whether he had ever worked as a clerk in a law office before.  All we do know about him is that he was neither a lawyer nor a paralegal.

G.    <u>Fees sought by Jackson may cross over into more appropriate categories than those shown on the Summary and this issue should be bifurcated for clarification in the event the Court is inclined to grant any portion of Jackson's Verified Motion.</u>

As described above in more detail, Jackson's Verified Motion was filed in violation of the clear directives contained in Local Rule 7.3. The filing of the Verified Motion eight (8) days after service of the Draft Verified Motion was no accident. Kowalski has outlined in the Summary those matters she objects to as best as possible at this time. But, given Jackson's flagrant violation and the holiday recesses, its inclusion of clearly objectionable fee requests, and its history of endeavoring to create undue delay and additional and unnecessary work for Kowalski, it has been impossible for Kowalski to be any more specific. Kowalski respectfully requests that, in the event this Court is inclined to grant any portion of Jackson's Verified Motion, that the matter of the

individual charges be bifurcated for additional clarification before the Court issues its Order.

**VI.**  **Any fee allowed should be reduced because of (i) the reasonableness of Kowalski's rejection of the offer and (ii) the factors which the Statute mandates that "the court shall consider" in determining the reasonableness of an award.**

The Florida Supreme Court had ruled that, while the reasonableness of the rejection of an offer of judgment is no defense to a § 768.79 fee award, it is a factor to consider in fixing the amount of the reasonable fee awarded, *TGI Friday's v. Dvorak*, 663 So. 2d 606, 613 (Fla.1995), "… in a given case, the court could justifiably reduce the amount of the attorney's fee to be assessed against a severely injured plaintiff who suffered an adverse verdict after rejecting a small settlement offer. By the same token, the court could reasonably conclude that a defendant with a small liability potential who rejected a large settlement offer should pay only a reduced fee even though the verdict ultimately exceeded the offer by more than twenty-five percent." The Court went on to note that "it seems clear that at least some of the factors enumerated in subsection (2)(b) of section 768.79, Florida Statutes (1987), bear on the question of whether the offer or demand for judgment was unreasonably rejected…".

In the present case, the reasonableness of the Lisa's rejection of the offer reflects three of the factors listed in §768.79(7)(b) as those which "the court shall consider, along with all other relevant criteria:"

 1.  The then apparent merit or lack of merit in the claim.

 2.  The number and nature of offers made by the parties.

 5.  Whether the suit was in the nature of a test case presenting questions of far - reaching importance affecting non-parties.

As to the nature of the offer, it was basically the same as Jackson's Rule 11 Motion [DE 123]. -- a demand that Kowalski surrender her contract claim or run the risk of sanctions, in this instance in the form of attorneys' fees.  If the Court ruled in favor of any of the contract claims her damages would be the $205,000 deposited with the court, plus costs, pre-judgment interest plus attorneys' fees under §627.428., F.S. Thus,

Jackson's total exposure, and Kowalski's potential recovery, were well over $250,000, so that the $1,000 offer was less that 0.004% of the amount at issue.

As to the apparent merit in the claim, the Court already found, in rejecting Jackson's Rule 11 Motion that Kowalski acted in good faith in asserting, and refusing to withdraw, her contract claims. [DE 158, pg. 4-5].  Since Kowalski's counsel genuinely believed that the contract claims were valid and the Court had rejected Jackson's assertions that leave to assert them should be denied because they were futile, it was reasonable for Kowalski not to accept the offer of $1,000, which would be a concession that they had no chance of prevailing. Moreover, the Court also found that "a reasonable attorney in like circumstances could believe that [the contract claims] were factually and legally justified." [DE 158, pg. 4.] [24]

Jackson failed to provide, either in its Verified Motion or at the time of service of its Offer, any indication whatsoever bearing on its assessment of liability or the extent of its potential damages. Given the fact that the Verified has been once recertified, Jackson should be allowed no further opportunity to do so.

To win on her claim that Jackson breached its duty to act with due care and in accordance with the implied covenant of good faith and fair dealing in administering the change of beneficiary provisions of the contract, Kowalski would have to prevail on both of the two sides of her claim: (i) On the legal side --  that that an insurer has a duty to act carefully, in good faith and fairly – in administering the change of beneficiary provisions of a policy; and (ii) On the factual side – that Jackson's whole course of conduct in dealing with Kowalski's attempts to confirm that she was or to become beneficiary did not meet these legal standards.

Although this Court ultimately refused to apply the duty of due care and the implied covenant of good faith and fair dealings to the change of beneficiary provisions of the Policy, at the time the Offer was made and rejected there was more than a 0.004 percent chance that this Court would rule otherwise. On the factual issue, the Court has

---

[24]     The quotation in the text is the Court's statement of the standard for determining "whether a claim is objectively frivolous."   Applying this standard, the Order continues, "although the Court found that Jackson was entitled to Summary Judgment on Kowalski's breach of contract claim, the evidence before the Court does not establish that Kowalski's counsel's actions were objectively unreasonable…"

never found that Jackson handled Kowalski's change of beneficiary attempts properly,[25] it simply held that it Jackson had no duty to do so and that any reliance by Kowalski on what she described as Jackson's failures was not reasonable. [DE 157, pg. 17 – 18]. Indeed, Jackson's defense against Kowalski's summary judgment motion was on the same basis of no duty and unreasonable reliance, and not on the grounds that Jackson handled to its dealings with her properly. *See,* Jackson's Motion for Summary Judgment on Kowalski's Second Amended Complaint [DE121, pg. 16 -18].

If the claim of breach of the duty of due care or the implied covenant of good faith and fair dealing in connection with the change of beneficiary provisions of the Policy had prevailed here, or prevails on appeal, it would have, or will, establish a new basis on which other insured policy holders and beneficiaries, actual and intended, could seek relief when they lose out because their insurers do not administer their policies with professional competence.  This would be of far reaching importance, affecting other insureds, beneficiaries and companies in future cases.

## VI.    CONCLUSION.

The *Stouffer* court*,* 944 F.Supp., 875 said it quite well, "an offer of judgment or offer of settlement or the same thing by another name ought to be more than a carefully crafted, cleverly calculated, and disingenuous attempt to shift the economic burden of litigation." Unfortunately for Kowalski, her dealings with Jackson turned out to be much more than that; her dealings with Jackson turned out to be a long and continuous battle, with an unresponsive insurer, operating under a sense of immunity, that had no reservations about conducting itself in bad faith whenever the opportunity presented itself.

Jackson's Verified Motion should be denied.

---

[25]    For instance, the Court expressly found that Ron's statements to Kowalski could equally been read the way she understood them and the way Jackson interpreted them. DE 157, pg.13, n. 4.  It seems obvious that for a customer service representative to give ambiguous instructions, after assuring a caller that he will tell her how to accomplish her goal, would not be consistent with a duty of due care or of good faith and fair dealing if such duties were found to apply.

## CERTIFICATION OF COMPLIANCE WITH L.R. 7.1

The undersigned certifies he has conferred with all parties who may be affected by the relief sought in the Motion To Determine Entitlement to Fees Prior To Submission On Issue Of Amount Pursuant To Local Rule 7.3(a), by email inquiry, in a good faith effort to resolve the issues raised in the motion and did not receive an affirmative response which indicates that Jackson's attorneys were not in agreement with the relief sought in the motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 3, 2014 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following users:

Joshua A. Hajek                              Thomas G. Aubin
Attorneys for Wilson                         Farah Bridges
COHEN & GRIGSBY, P.C.                         Attorneys for Jackson National
9110 Strada Place                            STEARNS WEAVER MILLER
Suite 6200                                   WEISSLER ALHADEFF & SITTERSON
Naples, FL   34108                           200 East Las Olas Blvd., Suite 2100
                                             Ft. Lauderdale, FL 33301

By: */s/ Charles P. Randall*
Charles P. Randall
Attorney for Lisa Kowalski
523 N.E. 47th St.
Boca Raton, Fl. 33431
Tel: (561) 750-5050
Fax: (561) 750-7272
FBN 651559